# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

## STATESBORO DIVISION

| | | |
|---|---|---|
| RODNEY LORENZO SCOTT, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | CV615-106 |
| | ) | CR612-018 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Convicted and sentenced after a jury trial for his participation in a drug distribution conspiracy, docs. 754, 755, [1] Rodney L. Scott moves under 28 U.S.C. § 2255 to have his sentence reduced from life imprisonment. Docs. 1149 & 1151. The Government filed a response and Scott filed a reply. Docs. 1245, 1271. Review of the parties' briefing shows that Scott's motion must be denied.

## A.    Background

Movant was charged with conspiring to possess with intent to distribute 280 grams or more of cocaine base, five kilograms or more of

---

[1]    The Court is citing to the criminal docket in CR612-018 unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

cocaine hydrochloride, and quantities of ecstasy and marijuana (Count 1), plus three counts of using a communication facility (telephone) to facilitate the conspiracy (Counts 39, 65 & 106). Doc. 3.

Scott and one of his co-defendants proceeded to trial and were found guilty on every count. Docs. 754 & 755. As part of a special verdict form, the jury also found that Scott and his co-defendant had conspired to distribute 280 grams or more of cocaine base and five kilograms or more of cocaine hydrochloride. *Id.* Prior to trial, the Government had filed a 21 U.S.C. § 851 notice of its intention to seek enhanced penalties based on Scott's prior felony drug convictions, thus subjecting him to a mandatory life sentence. Doc. 709; *see* 21 U.S.C. §§ 841(b)(1)(A), 846. The Court, however, granted the Government's motion to withdraw the notice prior to sentencing, thus reducing Scott's exposure to the unenhanced penalty -- 10 years to life. Docs. 983; 984 at 5.

Scott's Presentence Investigative Report added nine points to his drug-offense Guideline level of 32 -- two for the possession of a firearm, two for the maintenance of a residence for the purpose of manufacturing and distributing crack cocaine, two for the commission of the offense as

part of a criminal livelihood, three for an aggravating role, and two for obstruction of justice -- for a total offense level of 43. PSR at ¶¶ 33-43. Because Scott's criminal history placed him within category III under the Guidelines, the advisory range of imprisonment was life imprisonment. *Id.* at ¶ 55 (prior convictions scoring six criminal history points under the Guidelines); ¶ 78 (life imprisonment advised for total offense level of 43 and criminal history category III). Scott objected only to the three-level aggravating role adjustment, *id.*, Addendum at 1, which the Court overruled after a hearing. Doc. 984 at 18. It sentenced him to life imprisonment. *Id.* at 19-25.

Scott appealed, arguing, *inter alia*, that (1) insufficient foundation existed for the admission of certain wiretapped telephone conversations; (2) a law enforcement agent improperly testified as an expert at trial; (3) his prior drug convictions were improperly admitted at trial; (4) his drug-related tattoos were improperly admitted at trial; and (5) he should not have received a three-level aggravating role adjustment. Doc. 1078; *United States v. Stanton*, 589 F. App'x 477 (11th Cir. 2014). After briefing and oral argument, the Eleventh Circuit affirmed his conviction. *See id.* Upon Scott's *pro se* motion for a reduced sentence

3

under 18 U.S.C. § 3582(c)(2), the Court granted a two-level offense level reduction and reduced his sentence from life imprisonment to 360 months' imprisonment.  Docs. 1107 & 1128.  He then filed the instant § 2255 motion, seeking to overturn his remaining sentence.  Docs. 1149 & 1151.

## B.  ANALYSIS

Scott presents three grounds for relief: (1) "prosecutorial misconduct" and "malicious prosecution," (2) errors by the district court, and (3) ineffective assistance of counsel during trial and appeal. Doc. 1151.

### 1.  The Ippolito Factor

Scott contends that the lead prosecutor in his case, former Assistant United States Attorney Cameron Ippolito, engaged in extracurricular prosecutorial misconduct[2] and malicious prosecution, adversely affecting his sentence.  Doc. 1151 at 40.

Misconduct claims justify relief on collateral review if the prosecutor's actions rendered the proceedings "so fundamentally unfair

---

[2]  Ippolito "engaged in an improper relationship" with former Alcohol Tobacco and Firearms Agent Lou Valoze that tarnished several convictions and sentences unrelated to Scott's.  *In re Ippolito*, 2015 WL 424522 at * 1 (S.D. Ga. Jan. 30, 2015).

as to deny him due process." *Davis v. Zant*, 36 F.3d 1538, 1545 (11th Cir. 1994). Movants thus must show that there is "a reasonable probability that the outcome was changed" by the prosecutor's actions. *Id.*

Scott falls short of meeting that burden. Regardless of what Ippolito did in her private life with Agent Valoze and how it may have impacted the outcome of *other* cases, Scott's case had *absolutely nothing* to do with Agent Valoze. Valoze was not involved in the Government's investigation or prosecution of Scott in any way, and did not testify in any matter related to Scott. *See Ippolito*, 2015 WL 424522. Nothing about the Ippolito-Valoze affair could have been used at trial to cross-examine or impeach any witness.[3]

---

[3] Scott links nothing to the "tainted" facts revealed by the Government:

(1) that Assistant United States Attorney Cameron Ippolito and ATF Special Agent Lou Valoze engaged for years in an affair; (2) that Agent Valoze, assisted by AUSA Ippolito, provided potentially false or misleading information to a government agency to secure a visa for a government informant; and (3) that Agent Valoze, under questioning by AUSA Ippolito during a criminal trial, provided potentially false or misleading testimony regarding benefits provided to that government informant.

*Ippolito*, 2015 WL 424522 at * 2; *see also id.* ("In every case from 2009 to the present in which Valoze testified in a contested hearing, including trial, sentencing, or an evidentiary hearing on a suppression or other pretrial motion, from the inception of the affair to the present, the government intends to disclose the fact of the affair to defense counsel. In those contexts, Valoze's testimony arguably was material to guilt or punishment, and the affair could have been a viable subject of cross-examination

Scott contends that Ippolito and Valoze "conco[c]ted multiple cases as a unit" (doc. 1149 at 40) and that the testifying agent in his case, Agent Kevin Waters, was friends with Valoze (doc. 1271 at 20-21), *ergo* they *must* have colluded in some unidentifiable but meaningful way. He offers, however, absolutely no evidence above mere conjecture of any "spill-over behavior" that even tangentially connects the affair (or friendship) to his case -- much less that the proceedings against him were rendered "so fundamentally unfair as to deny . . . due process" or that, had he known of the affair, there was a "reasonable probability" of a different trial outcome. *Davis*, 36 F.3d at 1545.[4]

Scott also alleges that the Government's dismissal of charges against some defendants, who had been misidentified on recorded

---

into his bias."). Again, Valoze was *not* involved with Scott's case at *any* point of the investigation or prosecution, and *never* testified at his trial. Movant's specious allegation that Ippolito's "love affair tainted her hindsight" so that "she trusted the evidence" "without investigation or ignoring the investigation and innocence of defendant" is just that: specious. Hogwash. Doc. 1271 at 20. The Ippolito-Valoze affair is completely *irrelevant* to Scott's incarceration.

[4]   Even if the Court assumed that contemporaneous knowledge of Ippolito's affair would have utterly destroyed her credibility at sentencing, Ippolito never testified. Her credibility has no relationship to the testifying witnesses and even if it did, one mitigating witness who gave testimony of questionable value likely would not have made a difference when stacked against the criminal history and offense severity facing Scott. That quantum of evidence certainly isn't enough to show "a reasonable probability that the outcome was changed" by Ippolito's presence at sentencing. *Davis*, 36 F.3d at 1545.

telephone calls, was reversible error. Doc. 1149 at 40-41. But there is no evidence whatsoever that *Scott* was misidentified in the phone calls. It cannot be malicious prosecution to dismiss charges against an incorrectly identified defendant while pursuing charges against one correctly identified and inculpated by substantial circumstantial evidence. That is the essence of responsible, ethical prosecution.

### 2. Ineffective Assistance of Counsel

In his second claim, Scott argues that Ryan Babcock, his trial counsel, was ineffective for (1) failing to better argue pre-trial motions and trial objections; (2) failing to move for acquittal based on insufficient evidence against him; (3) failing to request certain jury instructions on conspiracies and buyer-seller relationships; (4) failing to object to a variance between the indictment and proof offered at trial; (5) failing to present evidence of drug sales to a *different*, unindicted co-conspirator; (6) failing to object to "hearsay" testimony; (7) failing to object to Agent Waters' testimony, and (8) failing to raise claims on direct appeal. *See* docs. 1149, 1151 & 1271.

"To prevail on a claim of ineffective assistance of counsel, a prisoner must prove that his counsel rendered deficient performance

and that he was prejudiced by the deficient performance." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In evaluating adequacy of performance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence." *Putman v. Head*, 268 F.3d 1223, 1243 (11th Cir. 2001).

As to the prejudice prong, the prisoner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Matire v. Wainwright*, 811 F.2d 1430, 1434 (11th Cir. 1987) (same); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[A]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some *conceivable* effect on the outcome of the proceeding is insufficient to show prejudice.").

### i.    Motions and Objections

Scott complains that his attorney should have convinced the Court to sever his trial from that of his co-defendant and to exclude evidence of his tattoos and prior convictions.  Doc. 1149 at 1.  Babcock did swing that bat.  *See* docs. 696 (motion for severance), 733 (moving *in limine* to exclude evidence of prior drug convictions) & 736 (moving *in limine* to exclude evidence of drug-related tattoos).  The Court considered and denied all three motions.  *See* docs. 724 & 726 (severance), 740 (prior convictions and tattoos); *see also Stanton*, 589 F. App'x at 478 (finding no error in trial court's admission of evidence of prior convictions and tattoos).  As the Government notes, the mere fact "that this Court disagreed with Scott's attorney and denied his motions and objections does not render [his] performance deficient under *Strickland*."  Doc. 1245 at 8.  And even assuming that somehow Babcock's performance was deficient, movant has not demonstrated any IAC-level prejudice suffered from the Court's denial of these motions.  *See* docs. 1149, 1151 & 1271.  At best he indicates a conceivable, but not outcome-altering, effect.

Counsel also sought severance of his trial from his co-defendant

Terrance Stanton's -- on the possibility that Stanton might provide exculpatory testimony critical to Scott's defense. Doc. 696. The Court denied that motion because there was no proof Stanton would in fact do so. Docs. 724 & 726. Now Scott has an affidavit from Stanton saying he would have done so, *see* doc. 1159 at p. 68, but no actual offer was made at the time. It is unclear how movant believes his counsel was ineffective for not pushing harder for severance without any basis for it. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (there is no "constitutional right to compel appointed counsel to press nonfrivolous points").[5]

Scott's attorney also tried to exclude probative, but prejudicial, evidence of his prior drug convictions and drug-related tattoos. Docs. 736 & 737. In denying those motions, the Court agreed with the

---

[5] Even had Stanton so offered, it is far from certain severance would have been granted. His affidavit disclaims any connection to or knowledge about Scott and his alleged drug activities, and fails to inculpate himself in any way. Doc. 1151 at 65-68. Testimony that is self-serving, rather than contrary to one's own interest, is not the sort of testimony that fetches severance. *United States v. Green*, 818 F.3d 1258, 1280-81 (11th Cir. 2016) ("[S]tatements concerning the [codefendant's] testimony that would become available by severing trials must be specific and exonerative, rather than conclusory or self-serving, in order to justify severance. . . . [A] codefendant's proffered testimony . . . is of dubious creditability when it [i]s in no way contrary to [his] own interests."); *id.* at 1282 (a codefendant's "conclusory and self-serving" claim that "neither he nor [defendant] had conspired to distribute controlled substances illegally . . . is not the kind of testimony that warrants severance.").

Government that convictions demonstrating that "Scott possessed and sold drugs [at] the same time and place he was charged with being a member of a drug conspiracy was probative evidence, especially given his apparent defense at trial that he was mistakenly connected to the charged conspiracy."  Doc. 1245 at 13 (quoting *United States v. Ruis-Chavez*, 612 F.3d 983, 986 (8th Cir. 2010) (no error from introduction of defendant's past arrest during charged methamphetamine conspiracy where defense "was that he was simply in the wrong place at the wrong time and . . . [not] involved with a drug distribution ring" and arrest, involving methamphetamine and substantial amount of currency, "indicated that the opposite was true") and *United States v. Ramsdale*, 61 F.3d 825, 830 (11th Cir. 1995) (evidence of methamphetamine, money, and guns found in defendant's automobile was admissible evidence "inextricably intertwined" with his "role in the charged offense")).   And despite Babcock's motion and renewed objection at trial, the Court agreed with the Government that evidence of his tattoos was not unduly prejudicial.  Doc. 740; *see Stanton*, 589 F. App'x at 478 (affirming trial court's decision).

Because the Court's denial of his motions and objection were

correctly decided, Scott cannot demonstrate any prejudice suffered for his counsel's alleged failure to somehow better argue them.

### ii. Acquittal

Scott contests that his attorney was ineffective for failing to file a Fed. R. Crim. P. 29 motion for judgment of acquittal because there was insufficient evidence against him. Because such a motion would have been meritless,[6] Babcock was not ineffective for failing to make it. *Jones*, 463 U.S. at 751.

### iii. Jury Instructions

Scott contends that his attorney failed to ask the Court to instruct the jury on the difference between single and multiple conspiracies and on the insufficiency of a buyer-seller relationship to establish participation in a conspiracy. Doc. 1151 at 14-15. However, he was not entitled to an instruction on multiple conspiracies because there was

---

[6] Fed. R. Cr. P. 29 motions may be granted only if "no reasonable trier of fact could find guilt beyond a reasonable doubt." *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010). Here, a slew of testimony, multiple wiretaps, and other evidence were offered to demonstrate that Scott was involved in the manufacture and distribution of crack cocaine. *See* docs. 1291 at 6-11, 17-22, 52-55, 59-61, 79, 81-83, 94-95, 98-99, 104; doc. 1292 at 348, 355-60, 392-93. The plethora of evidence assembled against him could well have convinced a reasonable juror of his guilt, Scott's base denials of its sufficiency notwithstanding. *See United States v. Emmanuel*, 565 F.3d 1324, 1333 (11th Cir. 2009).

only one coordinated effort to sell crack cocaine between Scott and his coconspirators -- nothing offered at trial suggested the existence of more than one drug conspiracy. *See United States v. Calderon*, 127 F.3d 1314, 1328-29 (11th Cir. 1997) (a multiple conspiracy instruction is required where "there proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment."). And, regardless, Scott's entire defense hinged on an assertion he was unconnected to *any* conspiracy -- a jury instruction indicating he was a member of some other conspiracy would have done him no favors. *See Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000) ("Constitutionally sufficient assistance of counsel does not require presenting an alternative -- not to mention unavailing or inconsistent -- theory of the case."). *See also* doc. 1233 at 6 (the Court charged the jury to "determine from the evidence in this case whether the defendants are guilty or not guilty of those specific crimes" "charged in the indictment" and no others).

He also was not entitled to a buyer-seller instruction, which applies only to isolated transactions where "the buyer's purpose is

13

merely to buy, and the seller's purpose is merely to sell, and no prior or contemporaneous understanding exists between the two beyond the sales agreement[.]" *United States v. Beasley*, 2 F.3d 1551, 1560 (11th Cir. 1993). No reasonable juror could have looked at the content of the ongoing conversations between Scott, his buyer Mingo, and codefendant Stanton and concluded that this was a one-off. The jury heard conversations where Stanton agreed to provide drugs for resale by Scott, where they commiserated about the fates and loyalties of their associates, and where Mingo sought permission and direction from Scott on pricing of product. Doc. 924 at 81-82, 94-95, 98-99, 104. Scott's protests that he was misidentified (because, he claims, he only ever sold drugs on a personal basis) notwithstanding, sufficient evidence supported the jury's finding that this was more than an isolated instance. Too, the Court addressed any concerns by instructing the jury that "simply being present at the scene" or "associating with certain people in discussions, common goals and interests doesn't establish proof of a conspiracy." Doc. 1233 at 9-10; *see United States v. Russell*, 378 F. App'x 884, 888 (11th Cir. 2010).

### iv.    Variance

Scott also faults counsel for failing to object to a purported variance between the indictment's charged conspiracy and the conspiracy proved at trial. Doc. 1151 at 23-29. Babcock, however, cannot be found to have deficiently performed by making a frivolous argument. *Jones*, 463 U.S. at 754. A reversible variance exists where a reasonable jury could not have found the single conspiracy charged in the indictment based on the proof offered at trial establishing several, separate conspiracies. *See United States v. Calderon*, 127 F.3d 1314, 1327 (11th Cir. 1997). As discussed above, there was no trial evidence of multiple conspiracies. Babcock thus could not have in good faith argued variance.

### v.    Agent Waters

Scott argues that Agent Waters -- who had 18 years of law enforcement experience and had participated in hundreds of debriefings of drug dealers, developing a specialized knowledge of street-level drug distribution, tools of the drug trade, and drug code language (*see* doc. 703 at 2-3) -- was not qualified to testify as an expert. Doc. 1151 at 29-33. Thus, Babcock was deficient for failing to object to the admission of

his testimony. *Id.* However, given Agent Waters' breadth of experience and the contents of the recorded conversations played for the jury,[7] such an objection would have been frivolous. *See United States v. Emmanuel*, 565 F.3d 1324, 1335 (11th Cir. 2009) (finding no error where an officer with 15 years' experience and a background in analyzing code words testified as a Fed. R. Civ. P. 702 expert on the "operations of narcotics dealers, including drug codes and jargon").

Even if Agent Waters' testimony sometimes "went beyond interpreting code words to interpret conversations as a whole," this at most had a negligible effect upon the outcome. As discussed above, the jury was presented with a trove of evidence, testimony, and wiretapped conversations on which to base their decision on his guilt. *See* doc. 1291 at 6-11, 17-22, 52-55, 59-61, 79, 81-83, 94-95, 98-99, 104; doc. 1292 at 348, 355-60, 392-93. *Emmanuel*, 565 F.3d at 1336 ("Even if none of Sergeant Woodside's expert testimony was admissible, the jury could

---

[7]     In those conversations, the participants – including Scott – discussed "flow," "catching a play," "fronting," "feral," "slabs," "piecing out," "ittles," "circles," "weight transactions," "girl," "vick," "rips," "testing," "dropping," "dumb," "bedding down," "groovin it," "grinding it," "four-way," "9s," "stupid sack," "plays," "toolie," "four-fifths," "chopper," "the man," "iron," "jigged," "joogs." ([Doc. 924] at 75-76, 78- 79, 81-83, 86-87, 89-91, 93-95, 102-05.)

Doc. 1245 at 25.

have easily interpreted the recorded conversations as involving drugs based on other evidence in the case, including actual seizures of drugs and drug money and testimony from coconspirators. Considering the substantial evidence against [defendant], Sergeant Woodside's opinion testimony that went beyond interpreting drug codes and jargon was merely cumulative and was not essential to the jury's verdict."). Because any objection to Agent Waters' testimony would have been frivolous, and the admission of his expert testimony was merely cumulative and nonessential to the jury's verdict, counsel was not ineffective for failing to object to it.

### vi.    Other Evidence

Scott also faults counsel for failing to contradict witness Hawkins' testimony by presenting evidence that actually he sold drugs to a *different* person ("Treyvon"). Doc. 1151 at 25. In addition to being unsupported by anything beyond his own statement that this is so, Scott offers absolutely no argument indicating how counsel's failure to substitute evidence of sales to one buyer with evidence of sales to another in any way prejudiced his case. *See id.*

Movant further contends his counsel failed to object to some

17

"hearsay" testimony, but he fails to actually specify what that is.
Doc. 1151 at 27. Assuming that he objects to Hawkins' testimony as
hearsay, he does not specify what part of that testimony was hearsay.
*See id.* As best the Court can discern, Scott specifically objects to
Hawkins' testimony, regarding his knowledge of the other co-
conspirators, because he admitted he didn't have knowledge about some
of their illegal activities. *Id.* But a witness' admission that he does not
know something does not transform his entire testimony into
inadmissible hearsay, so movant cannot possibly find relief here.

### vii. Direct Appeal

Finally, Scott argues that Babcock failed to raise certain
arguments on appeal, which would have certainly resulted in a more
favorable disposition. Doc. 1151 at 34-39. The constitutional right to
appellate representation, however, does not include a right to present
frivolous arguments to the court. *McCoy v. Court of Appeals of
Wisconsin, Dist. 1*, 486 U.S. 429, 436 (1988); *Jones*, 463 U.S. at 754
("Nothing in the Constitution or our interpretation of that document
requires" an appellate attorney "to raise every 'colorable' claim
suggested by a client."). The appellate "attorney need not advance

every argument, regardless of merit, urged by the appellant . . . ." *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).

Scott complains about Babcock's decision to refrain from raising a litany of "issues of plain error" -- including "lack of jurisdiction, "lack of prosecution," and something about "the trial court's intervening into the trial." *See* doc. 1151 at 34-35. At best, movant is lobbing wishful thinking here.

### 3. District Court Errors

Scott argues that the Court made "numerous" errors that "accumulated to [his] being denied a fair and just criminal proceeding," including: (1) admitting evidence of his tattoos and prior convictions (to prove his bad character and "taint" the jury); (2) allowing Agent Waters to testify as an expert on his interpretation of "decoded language" and "drug jargon" and "the breakdown of drugs as being cocaine or crack;" (3) the Court's interference during the trial (apparently in overruling or sustaining objections from counsel and in informing the jury and counsel that the presiding judge had a funeral to attend); (4) failing to give the jury certain instructions on conspiracies and buyer-seller relationships; and (5) imposing an unreasonable sentence under the

Guidelines.  Doc. 1149 at 43-49.

A prisoner seeking collateral relief "must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Generally, where a movant seeks collateral relief based on trial errors to which no contemporaneous objection was made at trial, *id.* at 167-68, or on direct appeal, "it will be procedurally barred in a § 2255 challenge."  *United States v. Montano*, 398 F.3d 1276, 1279-80 (11th Cir. 2005).  (citing *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development."  *Mills*, 36 F.3d at 1055.  In other words, a movant may not use his collateral attack as "a surrogate for a direct appeal."  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (cite omitted).  To excuse the procedural bar, a § 2255 movant must "demonstrate a cause for [his] default and show actual prejudice suffered as a result of the alleged error."  *Montano*, 398 F.3d at 1280.

Scott's first and second claims that the Court improperly introduced evidence of his tattoos and prior convictions and allowed Agent Waters to testify -- already raised and rejected on appeal, *see*

20

*Stanton*, 589 F. App'x 477 -- are foreclosed. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills*, 36 F.3d at 1056. And because his third, fourth, and fifth alleged "errors" were *not* raised on appeal, they too are procedurally barred. His associated, meritless IAC claims do not overcome that bar. *Montano*, 398 F.3d at 1280; *Lynn*, 365 F.3d at 1232.

## C.    CONCLUSION

Accordingly, Rodney Scott's § 2255 motion should be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either. 28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") (emphasis added). Any motion for leave to appeal *in forma pauperis* therefore is moot.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this __9th__ day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA